UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH ANN MILLER, Personal Representative of
the ESTATE OF BETH ANN KELLY,

    Plaintiff,

                                              Civil Action No. _____

    v.

MYLAN INC, MYLAN PHARMACEUTICALS
INC., and MYLAN TECHNOLOGIES INC.,

    Defendants.

_____/

| | |
|---|---|
| S. JAY AHMAD (P43206) | BRITTANY M. SCHULTZ (P63272) |
| Ishbia & Gagleard, P.C. | Dykema Gossett PLLC |
| Attorney for Plaintiff | Attorney for Defendants |
| 251 Merrill Street, 2nd Floor | 39577 Woodward Avenue, Suite 300 |
| Birmingham, MI 48009 | Bloomfield Hills, MI 48304 |
| Telephone: 248-647-8590 | Telephone: 248-203-0700 |
| Email: sja@iglawfirm.com | E-mail: bschultz@dykema.com |

_____/

**NOTICE OF REMOVAL**

TO:    THE HONORABLE COURT
          CLERK OF COURT

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants Mylan Inc., Mylan Pharmaceuticals Inc. ("MPI"), and Mylan Technologies Inc. ("MTI") (collectively, the "Mylan Defendants"), by and through counsel, hereby give notice of the removal of the above-styled action from the Circuit Court for the County of Oakland, State of Michigan, Case No. 2012-124489-NP, to the United States District Court for the Eastern District of Michigan, Southern Division, and hereby state as follows:

## I.  BACKGROUND

1. On or about January 25, 2012, Beth Ann Miller, Personal Representative of the Estate of Beth Ann Kelly ("Plaintiff"), through counsel, commenced this action by filing a Complaint and Jury Demand in the Circuit Court for the County of Oakland, Michigan, Case No. 2012-124489-NP.

2. Plaintiff alleges that Beth Ann Kelly ("Decedent") died due to defects in the Mylan Fentanyl Transdermal System® ("MFTS"), an FDA-approved generic pharmaceutical product indicated for the treatment of persistent, moderate-to-severe chronic pain. In approving the product for market, the FDA deemed the MFTS to be "safe and effective" when used in accordance with its approved labeling and "bioequivalent" to the Reference Listed Drug, Duragesic®. Despite Plaintiff's unsupported allegations, see Complaint at ¶ 22, the MFTS has *never* been the subject of a recall and remains on the market today with the ongoing approval of the FDA.

3. According to the Complaint, Decedent was prescribed the MFTS by Dr. Stacey L. Bartell. Id. at ¶ 13. Upon information and belief, Dr. Bartell practices in South Lyon, Michigan.[1]

4. Plaintiff alleges that Decedent died "from a fatal overdose" on June 14, 2009 "in the City of Wolverine Lake, County of Oakland, State of Michigan." Id. at ¶¶ 1, 12, 14.

5. Plaintiff avers that Decedent was found unresponsive while working in her yard in Wolverine Lake, Michigan. Id. at ¶ 14.

6. Therefore, Decedent is a citizen of Michigan.

7. The Complaint does not specify Plaintiff's citizenship. Nevertheless, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State

---

[1] The Mylan Defendants attach hereto, as Exhibit A, a screenshot taken from Michigan's Department of Licensing and Regulatory Affairs' website, which confirms that Dr. Bartell is a medical doctor licensed to practice in Michigan, with a South Lyon address. See http://www7.dleg.state.mi.us/free/ (last accessed April 4, 2012).

as the decedent." 28 U.S.C. § 1332(c)(2).  Therefore, for purposes of this action, Plaintiff is also a citizen of Michigan.

8. Defendant Mylan Inc. is, at the time of removal, and was, at the time this action was commenced, a Pennsylvania corporation with its principal place of business located in Canonsburg, Pennsylvania.  Complaint at ¶ 4.

9. Accordingly, Mylan Inc. is considered a citizen of the Commonwealth of Pennsylvania.  See 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has a principal place of business").

10. Defendant MPI is, at the time of removal, and was, at the time this action was filed, a West Virginia corporation with its principal place of business located in Morgantown, West Virginia.  Complaint at ¶ 5.

11. Accordingly, MPI is considered a citizen of the State of West Virginia.  See 28 U.S.C. § 1332(c)(1).

12. Defendant MTI is, at the time of removal, and was, at the time this action was filed, a West Virginia corporation with its principal place of business located in St. Albans, Vermont.  Complaint at ¶ 6.

13. Accordingly, MTI is considered a citizen of the States of West Virginia and Vermont.  See 28 U.S.C. § 1332(c)(1).

## II. JURISDICTIONAL BASIS FOR REMOVAL

### A. The Amount in Controversy Exceeds $75,000

14. A removing party need only show that the amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000. Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993).

15. When the amount in controversy is not specified in the complaint, the Court may consider facts in the complaint as well as in the removal petition. In doing so, the Court may rely on its own judicial experience and common sense in determining whether the amount in controversy exceeds $75,000. See, generally Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1063 (11th Cir. 2010) (stating that the appellate court "found no case in any other circuit that purports to prohibit a district court from employing its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy"). The Court may also consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

16. In this wrongful death product liability action, Plaintiff alleges that the Mylan Defendants recklessly and intentionally disregarded known risks and distributed a defective pharmaceutical product, which caused Decedent's death. Complaint at ¶¶ 19-20.

17. More specifically, Plaintiff claims that the Mylan Defendants:

    i. Concealed facts from physicians, patients, and federal regulators regarding purported "significant dangers" associated with the MFTS, id. at ¶ 50;

    ii. Violated federal law and regulations regarding labeling for the MFTS, id. at ¶ 53;

    iii. Marketed the MFTS as "safe and effective," despite knowing that the product "could cause serious injury or death," id. at ¶ 57;

    iv. "[I]ntentionally, willfully, or recklessly concealed and misrepresented" information regarding the MFTS, upon which Decedent relied, thereby causing her death, id. at ¶¶ 62, 68;

    v. Breached express warranties by distributing a product that was "imminently dangerous in light of the risk of life-threatening side effects … including, but not limited to overdoes [sic] and coma," id. at ¶ 81; and

    vi. Employed "unfair, unconscionable and/or deceptive practices in the conduct of trade and/or commerce" by distributing a product which they "knew" was defective "so as to maximize sales and profits at the expense of the health and safety of the consuming public … in conscious disregard of the foreseeable harm cause [sic] by these products," id. at ¶¶ 90-91.

18. Plaintiff seeks recovery on no less than nine (9) legal theories, including strict liability (design, manufacture, and marketing defect), negligence, negligent misrepresentation, fraud, implied warranty, express warranty, and violations of Michigan's Consumer Protection Act. See, generally id. at ¶¶ 23-91.

19. While the Complaint states only that the "amount in controversy exceeds $25,000.00,"[2] Plaintiff includes the following damages, see id. at ¶ 93:

---

[2] The Complaint is artfully worded to secure subject matter jurisdiction in the Michigan circuit court, without expressly meeting the minimum amount-in-controversy for federal jurisdiction. See Mich. Comp. Laws § 600.8301. Nevertheless, "a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount. This would allow frustration of the purpose of diversity jurisdiction, which is, after all, to protect the out-of-state defendant." McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008) (upholding finding of federal jurisdiction in product liability wrongful death action where the complaint did not specify the amount of damages sought).

      i. Compensatory damages for pain, suffering, emotional distress, loss of enjoyment of life and other non-economic damages;

     ii. Compensatory damages, including, but not limited to medical expenses, funeral expenses, loss of earning capacity, out of pocket expenses, and other economic damages;

    iii. All wrongful death damages recoverable under the Michigan Wrongful Death Act, including, but not limited to past and future pecuniary loss, loss of companionship and society, loss of love, support, and affection, economic loss, counseling, solace, mental anguish, and loss of inheritance; and

    iv. Attorney's fees and any other relief as is fair, just, and equitable.

20. By the face of the Complaint, the amount-in-controversy in this wrongful death action plainly exceeds $75,000, exclusive of interest and costs.

21. This Court has previously observed: "This being a **wrongful death action**, the amount is controversy **clearly exceeds** [the statutory minimum]." Knickerbocker v. Chrysler Corp., 728 F. Supp. 460, 463 (E.D. Mich. 1990) (emphasis supplied).

22. Even when a complaint does not specify the amount of damages sought, "**judicial experience and common sense** dictate that the value of [a lawsuit raising claims of product liability and wrongful death] more likely than not exceeds the minimum jurisdictional requirement." Roe, 613 F.3d at 1066 (emphasis supplied).

23. As the Fifth Circuit concluded, "it is **facially apparent** that … plaintiff's **wrongful death** claim satisfies the amount in controversy requirement." Menendez v. Wal-Mart Stores, Inc., 364 F. App'x 62, 67 (5th Cir. 2010) (emphasis supplied).

24. In the context of a product liability wrongful death lawsuit where the plaintiff did not specify the amount of damages sought, the District Court for the Middle District of Alabama remarked: "While it would be speculative to specify the exact dollar amount at issue in this case, it is not speculative to conclude from the egregious conduct alleged that the amount, whatever it is, far exceeds $75,000. Indeed, the court cannot image a plaintiff's lawyer saying with a straight face that this **wrongful-death case** should be valued at no more than $75,000. **Such a representation would fail the so-called 'laugh test.'** Thus, the complaint 'unambiguously' reflects that the amount involved is more than $75,000." Roe v. Michelin N. Am., Inc., 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) aff'd, 613 F.3d 1058 (11th Cir. 2010) (emphasis supplied).

25. Along the same lines, the Middle District of Florida denied remand in a product liability wrongful death action, finding that it is "facially apparent" from the complaint that the amount in controversy exceeded $75,000: "Based on the unchallenged factual allegation that **a life was lost**, the Court has engaged in a **common sense** evaluation of the types of damages that Plaintiff is seeking and concludes Defendant has established by a preponderance of the evidence that the amount in controversy is in excess of $75,000." Angrignon v. KLI, Inc., No. 08-81218-CIV, 2009 WL 506954, at *4 (S.D. Fla. Feb. 27, 2009) (emphasis supplied).

26. Numerous federal courts, both trial and appellate, have reached the same conclusion.[3]

---

[3] See, e.g. McPhail v. Deere & Co., 529 F.3d 947, 957 (10th Cir. 2008) (upholding finding of federal jurisdiction in product liability wrongful death action where the complaint sought damages "in an amount in excess of Ten Thousand Dollars"); De Aguilar v. Boeing Co., 11 F.3d 55, 57 (5th Cir. 1993) ("It is **facially apparent** that the claims in this case – claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses – did exceed [the jurisdictional minimum] at the time of removal.") (emphasis supplied); Borquez v. Brink's Inc., No. CIV.A.3:10CV380-O, 2010 WL 931882, at *5 (N.D. Tex. Mar. 12, 2010) (finding that a complaint alleging wrongful death "**affirmatively reveals on its face** that the damages sought exceeded $75,000") (emphasis supplied); Kammerdiener v. Ford Motor Co., No. EDCV09-2180PSG(VBKX), 2010 WL 682297, at *2 (C.D. Cal. Feb. 24, 2010) ("That Plaintiffs are seeking recovery for **wrongful death** is sufficient to establish that the amount in controversy exceeds $75,000 **on the face of the Complaint**.") (emphasis supplied); Hogue v. State Farm Fire & Cas. Co., No. 08-5000, 2009 WL 2525751, at *3 (E.D. La. Aug. 17, 2009) (denying remand, because the plaintiff's

27. Therefore, given that this is a wrongful death lawsuit wherein Plaintiff alleges intentional and fraudulent conduct and seeks extensive damages and attorney's fees, the amount in controversy clearly exceeds $75,000, exclusive of interests and costs. See 28 U.S.C. § 1332(a).

28. Moreover, even if it weren't abundantly clear from the face of Plaintiff's wrongful death Complaint that the amount-in-controversy requirement is satisfied, the Mylan Defendants direct the Court's attention to substantial verdicts for plaintiffs reached in other wrongful death product liability actions tried in Michigan, all of which exceed $75,000, exclusive of interests and costs.[4] These verdicts provide additional support for the Mylan

---

wrongful death allegations "would lead one to reasonably infer from the face of the original petition that this claim likely exceeds $75,000"); Cooper v. R.J. Reynolds Tobacco Co., 586 F. Supp. 2d 1312, 1315 (M.D. Fla. 2008) (stating that, in the context of a class action suit alleging product liability wrongful death, "it is likely that each individual plaintiff makes a claim exceeding $75,000"); Stewart v. Glenburney Healthcare, No. 508CV270DCBJMR, 2008 WL 5412311, at *1 n.1 (S.D. Miss. Dec. 23, 2008) (denying remand in a wrongful death case, because "it is **facially apparent** from the … complaint that the amount in controversy exceeds $75,000, given the nature of the plaintiff's claims") (emphasis supplied); Branson v. Medtronic, Inc., No. 5:06-CV-332-OC-10GRJ, 2007 WL 170094, at *5 (M.D. Fla. Jan. 18, 2007) (denying remand where the plaintiff alleged that a defective medical device caused her husband's death, finding that the question of whether the amount-in-controversy requirement was met "**is not even close**") (emphasis supplied); Barahona Rodriguez v. Kivett's Inc., No. 3:05 CV 738 WHB JCS, 2006 WL 2645190, at *1 (S.D. Miss. Sept. 12, 2006) (denying remand in a wrongful death suit, even though the plaintiff did not specify damages over $75,000, because "the Court finds it is **facially apparent** that [plaintiff] is seeking damages in an amount greater than the jurisdictional limit") (emphasis supplied); Carleton v. CRC Industries, Inc., 49 F. Supp. 2d 961, 962 (S.D. Tex. 1999) (holding that it is "**undeniably facially apparent, as a matter of law**" that plaintiff's damages exceeded $75,000 where he allegedly contracted cancer from exposure to defendant's product, since "**common experience**" dictates that damages resulting from "fatal illnesses" will meet the threshold amount for federal jurisdiction) (emphasis supplied). Cf. Corbelle v. Sanyo Elec. Trading Co., Ltd., No. C-03-1509 EMC, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003) (granting remand because, "[t]his is not a case where the complaint alleges **wrongful death** or permanent disability or other such facts that would **clearly** establish an amount in controversy in excess of $75,000."); McCabe v. Ford Motor Co., No. 1:10-CV-98, 2010 WL 2545513, at *7 (E.D. Tex. June 21, 2010) (granting remand in a wrongful death product liability suit, because "it is readily apparent from [the complaint] that the jurisdictional amount exceeds $75,000.00" and the defendant did not remove within thirty days of service of the complaint).

[4] See, e.g. Zuzula v. Abb Power T &; D Company Inc., JVR No. 425257, 2003 WL 25138105 (E.D. Mich. Sept. 2003) ($1,000,000 verdict in wrongful death product liability action where decedent was electrocuted while working on a switchgear fuse box, manufactured by the defendant); Wittebort v. Lakeway Chemicals Inc., JVR No. 454518, 1997 WL 34621544 (Mich. Cir. Ct. Muskegon Co. July 1997) ($300,000 verdict in wrongful death product liability action where decedent allegedly died of bladder cancer from exposure to benzidine derivatives manufactured by the defendant); Noe v. Honda, JVR No. 361273, 1997 WL 1110669 (W.D. Mich. March 1997) ($2,503,212 verdict in wrongful death product liability action where decedent allegedly died due to defects in automobile's design and manufacture); Capaldi v. Kmart, JVR No. 187932, 1996 WL 747265 (Mich. Cir. Ct. Macomb Co. Oct. 1996) ($1,000,000 verdict in wrongful death product liability action where decedent allegedly died due to defective design and warnings for playpen); Kavel v. Beavers, Inc., JVR No. 173942, 1995 WL 838561 (Mich. Cir. Ct. Oakland Co.,

8

Defendants' averment that this matter satisfies the amount-in-controversy requirement. See Benson v. City Fin. Co., No. 1:02CV242-D-D, 2003 WL 715986, at *3 (N.D. Miss. Feb. 12, 2003) ("In light of the jury verdicts rendered in similar cases … the court finds by a preponderance of the evidence that it is facially apparent that the amount in controversy in this matter exceeds the jurisdictional limit of $75,000.").

29. Finally, the Mylan Defendants note multiple jury verdicts outside of Michigan in wrongful death cases involving allegations of defects in a fentanyl patch – the precise claims raised by Plaintiff – each of which *vastly* exceeds the $75,000 minimum for jurisdiction in this Court.[5]

30. As it is both facially apparent from Plaintiff's Complaint and thoroughly supported by the evidence presented herein, the Mylan Defendants submit that the amount-in-controversy requirement is satisfied and jurisdiction properly lies with this Court.

B. **Complete Diversity Exists**

31. Plaintiff is considered a citizen of Michigan for purposes of this lawsuit. See 28 U.S.C. § 1332(c)(2).

---

Aug. 1995) ($2,200,000 verdict in wrongful death product liability action where decedent allegedly died due to defects in wood chipper's design and warnings); Vanest v. Anchor Packing Co., JVR No. 133606, 1994 WL 546847 (Mich. Cir. Ct. Wayne Co. Jan. 1994) ($900,000 verdict in wrongful death product liability action where decedent allegedly died of cancer from exposure to asbestos); Nutt v. Anchor Packing Co., JVR No. 133598, 1994 WL 546649 (Mich. Cir. Ct. Wayne Co. Jan. 1994) ($800,000 verdict in wrongful death product liability action where decedent allegedly died of cancer from exposure to asbestos); Sanders v. Celotex, JVR No. 53838, 1989 WL 394382 (Mich. Cir. Ct. Wayne Co. Oct. 1989) ($175,000 verdict in wrongful death product liability action where decedent allegedly died of cancer from exposure to asbestos).

[5] See, e.g. DiCosolo v. Janssen Pharmaceuticals, Inc., 951 N.E.2d 1238, 1256 (Ill. App. 2011), appeal denied, 962 N.E.2d 481 (Ill. 2011) (affirming **$18,000,000** compensatory damages awarded to family of decedent who allegedly died due to defects in Duragesic® fentanyl patch); Hodgemire v. Alza Corp., Case No. 2004CA001311 (Fla. Cir. Ct. Seminole Co. Oct. 28, 2008), aff'd 49 So.3d 767, 769 (Fla. 5th DCA 2010) (**$13,300,000** verdict awarded to family of decedent who allegedly died due to defects in Duragesic® fentanyl patch) (Docket Sheet attached hereto as Exhibit B; Bloomberg article discussing verdict attached hereto as Exhibit C); Hendelson v. Alza Corp., No. 9:05-cv-81116-DTKH, Docket Entry No. 219-2 – Verdict (S.D. Fla. June 21, 2007) (**$5,500,000** compensatory damages awarded to family of decedent who allegedly died due to defects in Duragesic® fentanyl patch) (attached hereto as Exhibit D); Thompson v. Alza Corp., Cause No. 2005-11685, Final Judgment (Tex. 113th Dist. July 24, 2006) (**$772,500** compensatory damages awarded to family of decedent who allegedly died due to defects in Duragesic® fentanyl patch) (attached hereto as Exhibit E).

9

32. Mylan Inc. is a citizen of Pennsylvania.

33. MPI is a citizen of West Virginia.

34. MTI is a citizen of West Virginia and Vermont.

35. Thus, the requirement of complete diversity is satisfied. 28 U.S.C. § 1332(a)(1).

36. This Court, therefore, has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### III. THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN ESTABLISHED

#### A. Removal is Timely

37. MPI, MTI, and Mylan Inc. were served with the Complaint on March 26, 2012.

38. This Notice of Removal is filed within thirty (30) days of service upon the Mylan Defendants, the only defendants to this action, and therefore, is timely under 28 U.S.C. § 1446(b). See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999) (30-day time period for removal runs from the date of formal service).

#### B. Venue is Proper

39. This action is properly removed to the United States District Court for the Eastern District of Michigan because this matter was originally filed in the Circuit Court for the County of Oakland, Michigan, which lies geographically within this District and Division. See 28 U.S.C. §§ 102(a)(1), 1441(a).

#### C. Remaining Procedural Requirements are Satisfied

40. Copies of all process, pleadings, orders, and other papers received by the Mylan Defendants, comprised only of the Complaint, are attached as Exhibit F. See 28 U.S.C. § 1446(a).

41.     A copy of this Notice will be filed with the Clerk of the Circuit Court for the County of Oakland, Michigan, and served on Plaintiff. *See* 28 U.S.C. § 1446(d).

42.     Copies of the Mylan Defendants' disclosure statements are being filed concurrently with this Notice, in accordance with Federal Rule of Civil Procedure 7.1

43.     No previous application has been made for the relief requested in this removal.

44.     As the Mylan Defendants are the only defendants named to this action, this matter is removed with the unanimous consent of all defendants.

45.     Thus, all procedural requirements for removal have been satisfied.

46.     If any question arises as to the propriety of the removal of this action, the Mylan Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and Mylan Technologies Inc. respectfully remove this action from the Circuit Court for the County of Oakland, Michigan to the United States District Court for the Eastern District of Michigan.

Date: April 16, 2012 DYKEMA GOSSETT PLLC

By: /s/ Brittany M. Schultz
    Brittany M. Schultz (P63272)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, MI 48304
    Telephone: 248-203-0802
    Facsimile: 248-203-0763
    E-mail: bschultz@dykema.com


    PIETRAGALLO GORDON ALFANO
    BOSICK & RASPANTI, LLP
    Clem C. Trischler
    *Admission to be sought*
    One Oxford Centre, 38th Floor
    Pittsburgh, PA 15219
    Telephone: 412-263-2000
    Facsimile: 412-261-5295
    E-mail: cct@pietragallo.com

    Attorneys for Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and Mylan Technologies Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Notice of Removal** was served via First Class U.S. Mail, postage prepaid, this 16th day of April, 2012, upon the following:

>S. JAY AHMAD (P43206)
>Ishbia & Gagleard, P.C.
>Attorney for Plaintiff
>251 Merrill Street, 2nd Floor
>Birmingham, MI 48009
>Telephone: 248-647-8590
>Email: sja@iglawfirm.com

        By    /s/ Brittany M. Schultz
               Brittany M. Schultz (P63272)

BH01\1538790.1
ID\BMS - 106897\0001